UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BILLY R. McCOY )
)
v. ) NO. 2:11-CV-178
)
STONEBRIDGE LIFE INSURANCE )
COMPANY )

## MEMORANDUM OPINION AND ORDER

The plaintiff, Billy R. McCoy, filed the complaint in this case alleging breach of contract, statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105, and a violation of the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101, *et seq*. The defendant has filed a motion for summary judgment in regard to the plaintiff's statutory bad faith and TCPA claims. [Doc. 9]. The plaintiff has filed a response. [Doc. 11]. This matter has been fully briefed and is ripe for disposition.

In the defendant's motion for summary judgment, the defendant contends that the plaintiff clearly knew when it sent the November 10, 2009 letter that the defendant was paying the plaintiff under Part II and not under Part I of the policy, and by waiting until May 19, 2011, to file suit, the plaintiff allowed his statutory bad faith and TCPA claims to lapse under the one-year statute of limitations which is applicable to each of them. In addition, the November 10, 2009 letter explains why the defendant is paying benefits under Part II and not Part I.[1]

---

[1] The November 10, 2009 letter is attached as Exhibit 1 to the defendant's Motion for Summary Judgment.

The plaintiff contends that the letter of November 10, 2009, was an acceptance and not a denial and that the denial did not come until a November 17, 2010 letter in which the defendant explained to plaintiff's counsel the reason that benefits were paid under Part II and not under Part I of the Benefit Schedule. Significantly, this letter does not purport to deny a claim.[2]

## I. STATEMENT OF UNDISPUTED FACTS SUBMITTED BY THE DEFENDANT

1. The plaintiff, Billy R. McCoy, is insured under the Policy attached to the Complaint and the Answer.

2. Mr. McCoy's wife was killed on September 15, 2009, while riding as a patient in an ambulance.

3. Mr. McCoy made a claim (Claim No. B-823665-01) under the Policy to recover a benefit for the death of his wife.

4. On the November 10, 2009, Stonebridge notified the plaintiff, in writing, that it would pay a $100,000 benefit.

5. In the November 10, 2009 notice, Stonebridge stated as follows:

> **Please let us explain our payment.** Part I of the Benefit Schedule of the above certificate states that if a Covered Person is injured as a direct result of a collision, crash or sinking of a duly licensed Common Carrier while riding as a fare-paying passenger inside such Common Carrier, we will pay the applicable benefit listed in Part I of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits.
>
> Common Carrier, as defined by the certificate, means a public conveyance which is:

---

[2] The November 17, 2010 letter is attached as Exhibit F to plaintiff's response.

> 1) licensed to transport passengers for hire; and
>
> 2) provided and operated (a) for regular passenger service by land, water, or air, and (b) on a regular passenger route with a definite regular schedule of departures and arrivals between established and recognized points of departure and arrival.

> We contacted the Johnson County Emergency & Rescue Squad, Inc. and were told the ambulance that was transporting your wife from the Johnson County Community Hospital to the Sycamore Shoals Hospital was operating as a "on call service" and was not operating on a regular passenger route with a definite regular schedule of departures and arrival between established and recognized points of departure and arrival, as required by the certificate.

> Therefore, your application for benefits was paid under Part II of the Benefit Schedule and not under Part I of the Benefit Schedule. We will be happy to review any information you feel may affect our handling.

6. Stonebridge actually paid the $100,000 benefit to the plaintiff.

7. The plaintiff filed his Complaint on May 19, 2011.

8. The advertisement attached to the Complaint states as follows:

> **Covers you for death or dismemberment in nearly any kind of accident:**
>
> **Common Carrier Accidents:** Covers you while a fare-paying passenger on a regularly scheduled licensed common carrier, including airplanes, buses, trains, trolleys, subways and ships. You're covered 24 hours a day, anywhere in the world.
>
> **Auto Accidents:** Covers you as a driver, passenger or pedestrian for vehicle accidents involving passenger cars, pickup trucks, tractor-trailers or other land vehicles as defined in the Certificate of Coverage.

9. The Policy states as follows:

> COMMON CARRIER means a public conveyance which is:

3

Case 2:11-cv-00178-JRG-DHI Document 38 Filed 09/25/12 Page 3 of 9 PageID #: 292

1. licensed to transport passengers for hire; and

2. provided and operated (a) for regular passenger service by land, water, or air, and (b) on a regular passenger route with a definite regular schedule of departures and arrivals between established and recognized points of departure and arrival; and

3. provided and operated under a Common Carrier license at the time of loss.

. . . .

**PART I – BENEFIT FOR TRAVEL BY REGULARLY SCHEDULED COMMON CARRIER**

If a Covered Person is injured as a direct result of collision, crash or sinking of a duly licensed Common Carrier while riding as a fare-paying passenger inside such Common Carrier, the Company will pay the applicable benefit listed in Part I of the Schedule of Insurance for appropriate Loss as shown in the Schedule of Losses and Benefits below.

## II. UNDISPUTED FACTS SUBMITTED BY THE PLAINTIFF

1. On October 2, 2009, Mr. McCoy submitted a "Proof of Accidental Death –Affidavit of Claimant" to Stonebridge, seeking benefits under the policy he purchased. (See Proof of Accidental Death – Affidavit of Claimant, attached hereto as Exhibit A).

2. On November 10, 2009, Stonebridge sent Mr. McCoy a letter regarding his claim for benefits.

3. The letter states, "Your application for benefits has been approved." The letter then states that a check for $100,000 is enclosed and explains that the benefits were being paid under Part II of the Benefit Schedule.

4

4. The letter does not include a copy of Part I and Part II benefits; however, the policy sent by Stonebridge to Mr. McCoy states the following:

> **PART I – BENEFIT FOR TRAVEL BY REGULARLY SCHEDULED COMMON CARRIER**
> If a Covered Person is injured as a direct result of collision, crash or sinking of a duly licensed Common Carrier while riding as a fare-paying passenger inside such Common Carrier, the Company will pay the applicable benefit listed in Part I of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits.
>
> **PART II – BENEFIT FOR TRAVEL BY PRIVATE PASSENGER AUTOMOBILE AND LAND MOTOR VEHICLE**
> If a Covered Person is injured:
> 1. by being struck by a Private Passenger Automobile; or
> 2. as a direct result of a collision or crash of a Private Passenger Automobile;
> 3. by being struck by a Land Motor Vehicle; or
> 4. as a direct result of a collision or crash of a Land Motor Vehicle,
> we will pay the applicable benefit specified in Part II of the Schedule of Insurance for the appropriate Loss as shown in the Schedule of Losses and Benefits.

5. Under the Schedule Page of the Policy, benefits paid under Part I for a spouse are $500,000, and benefits paid under Part II for a spouse are $100,000.. Thus, Stonebridge notified Mr. McCoy on November 10, 2009, that it was accepting his claim and paying the claim as a Part II loss.

6. Attached as Exhibit D is Stonebridge's "Routing Slip," which was produced by Stonebridge in its Rule 26(a)(1) Initial Disclosures. The Routing Slip clearly delineates that Stonebridge's response to Mr. McCoy's claim as a "1st Approval" and "Payment." The box for "Denial" is not checked.

7. On November 3, 2010, Mr. McCoy's attorney sent a demand to Stonebridge that it pay Mr. McCoy the benefits due under Part I of the policy. (See Letter of November 3, 2010, attached

5

to Doc. 14 as Exhibit E.

8. In response, Stonebridge sent a letter on November 17, 2010, stating it would not be paying benefits under Part I, as requested. (See Letter of November 17, 2010, attached to Doc. 14 as Exhibit F).

### III. ANALYSIS

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc*., 259 F.3d 558, 566 (6th Cir.2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir.2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir.2000) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).

To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc*., 285 F.3d 415, 424 (6th Cir.2002). "The mere existence of a scintilla of evidence

6

in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir.2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir.1999) (citing *Anderson*, 477 U.S. at 247-49).

The TCPA provides for a one year statute of limitations. Tenn.Code Ann. § 47-18-110. When a plaintiff alleges a violation of the TCPA, a federal court "must apply the procedural law, including statutes of limitations, of the forum state...." *Mackey v. Judy's Foods, Inc.,* 867 F.2d 325, 328 (6th Cir.1989). Under Tennessee law, a "cause of action accrues and the statute of limitations begins to run when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." *Potts v. Celotex Corp.,* 796 S.W.2d 678, 680 (Tenn.1990); *see also McCroskey v. Bryant Air Conditioning Co. .,* 524 S.W.2d 487, 491 (Tenn.1975). A plaintiff cannot wait [to file suit] until he or she knows every injurious effect or consequence of the wrong. *Ameraccount Club, Inc. v. Hill,* 617 S.W.2d 876, 878 n. 1 (Tenn.1981).

Tennessee does not recognize a general common law tort for bad faith by an insurer against an insured; the exclusive remedy for such conduct is statutory, provided by Tennessee Code Annotated § 56-7-105. *Fred Simmons Trucking, Inc. v. U.S. Fidelity and Guar. Co.,* 2004 WL 2709262 at *5 (Tenn.Ct.App.2004); *Persian Galleries, Inc. v. Transcontinental Ins. Co.,* 38 F.3d 253, 260 (6th Cir.1994); *Rice v. Van Wagoner Cos., Inc.,* 738 F.Supp. 252, 253 (M.D.Tenn.1990);

*Chandler v. Prudential Ins. Co.,* 715 S.W.2d 615 (Tenn.Ct.App.1986). Tennessee Code Annotated § 56–7–105(a) is penal in nature. See *Ginn v. American Heritage Life Ins. Co.,* 173 S.W.3d 433, 443 (Tenn.Ct.App. 2004).Tennessee Code Annotated § 28-3-104(a)(4) provides a one-year statute of limitations period applicable to "actions for statutory penalties."

The Court FINDS that the plaintiff was clearly put on notice by the November 10, 2009 letter that the defendant was paying the plaintiff under Part II and not under Part I of the policy and was given the reasons why the defendant was paying benefits under Part II and not Part I. Because this letter explains why benefits are not being paid under Part I , it cannot be construed as purely an acceptance as plaintiff contends. The November 17, 2010 letter in which the defendant explained to plaintiff's counsel the reason that benefits were paid under Part II and not under Part I of the Benefit Schedule does not purport to deny any pending claim. Therefore, the Court FINDS that the statute does not run from November 17, 2010 as plaintiff contends.

The Court FINDS that the defendant has meet the burden of proving the absence of a genuine issue of material fact as to the statute of limitations in regard to the plaintiff's statutory bad faith claim and his TCPA claim. The Court also FINDS that the plaintiff has not come forward with specific facts to demonstrate that there is a genuine issue in regard to the statute of limitations for trial. The Court FINDS that the plaintiff allowed his statutory bad faith and TCPA claims to lapse under the one-year statute of limitations which is applicable to each of them when he waited until May 19, 2011 to file suit. Thus, these claims must be dismissed.

## **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that the defendant's motion for summary judgment in regard to the plaintiff's claims of statutory bad faith pursuant to Tenn. Code Ann. §

8

56-7-105, and violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*, is **GRANTED**, and these claims are **DISMISSED**. [Doc. 9]. The plaintiff's breach of contract claim remains for trial.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE

9